# EXHIBIT E

```
STATE OF NEW YORK    :  COUNTY OF ERIE
COUNTY COURT         :  PART 40
```

THE PEOPLE OF THE STATE OF NEW YORK

                                      Indictment Number
                                        00431-2004
     against                         SCI Number 23490

KATHLEEN MAEDER,                            SENTENCE
              Defendant.

                                       Erie County Hall
                                       92 Franklin Street
                                       Buffalo, New York  14202
                                       August 4, 2004

B e f o r e :

        HONORABLE SHEILA A. DiTULLIO
            County Court Judge.

A p p e a r a n c e s:

        FRANK J. CLARK, III,
        Erie County District Attorney,
        By:  CANDACE K. VOGEL,
        Assistant District Attorney,
        Appearing on behalf of the People.

        JOHN DORN, ESQ.,
        501 John James Audubon Parkway,
        Suite 300,
        Amherst, New York  14228,
        Appearing on behalf of the Defendant.

        Gordon Gannon, Jr., Esq.,
        Counsel to the Boy Scouts.

        Gary Butler,
        Executive Director of the Boy Scouts.

                            Kathleen R. Hoffman, CSR, RMR, CMRS
                                Senior Court Reporter

1
2   MS. VOGEL: Good morning, your Honor.
3   Candace Vogel for the People. This is the matter
4   of Kathleen Maeder, file number 00431-2004.
5   Mrs. Maeder is present in the courtroom today
6   along with her attorney, Mr. John Dorn. We are
7   here today for the purpose of sentencing. As the
8   Court will recall, on April 16th of the year
9   2004, this defendant pled guilty under SCI number
10  23490 to the charge of grand larceny in the second
11  degree, a violation of Penal Law Section 155.40-1,
12  a Class C felony. At that time she admitted
13  restitution and signed a confession of judgment in
14  the amount of $206,939.43. Since that time, a
15  payment has been made to the Greater Niagara
16  Frontier Council of the Boy Scouts in the amount
17  of $20,000. I have had an opportunity to read the
18  presentence report and would be asking for
19  restitution in that full amount for the Boy Scouts
20  of America, the particular council here.
21  Mr. Butler from the council would like to make a
22  statement in regard to sentencing.
23      THE COURT: Thank you, Miss Vogel.
24      MS. VOGEL: I would indicate, also,
25  Mr. Gordon Gannon, who represents the Boy Scouts,

Case 1-08-01076-MJK Doc 8-5, Filed 06/11/08, Entered 06/11/08 10:02:50, Description: Exhibit Transcript, Page 3 of 13

```
                                                              3
```

        is also present.

                THE COURT:  Good morning.  Good morning,
        Mr. Butler.

                MR. BUTLER:  Good morning, your Honor.

                THE COURT:  Thank you for taking the time to
        be here.

                MR. BUTLER:  You're welcome.  I'm here
        representing the Boy Scouts of America based here
        in Buffalo which represents a large group of
        constituents, our youth members, our families, our
        board of directors, the donors who contribute to
        us, and the community at large that look to us to
        set a standard for the young people.  I see this
        all about trust, and our first Scout Law is a
        Scout is trustworthy.  We certainly put our trust
        in our former employee.  We put our trust in our
        orders to make sure that stuff like this won't
        happen, but, nevertheless, the trust failed.  And
        the message to our young people out there is a
        scout is trustworthy and there are consequences
        when you're not a trustworthy young person.

                The damage done in dollars does need to be
        repaid, but the damage done to our organization in
        its values may not ever be recovered from as

people look to us and say, how can we trust you when we can't trust some of your employees? So when we look at it, it's perhaps what good can come from this? And I think the good that can come from this is that in the restitution, once it's made, that we can use those funds to help young people learn the values that they need to learn. It goes a long way when we can take the money and send a boy to camp, when we can take the money and buy a young person a uniform, or just most recently, when we rallied the community to help raise funds for a Boy Scout troop that lost all their equipment in a fire. So that's the good that I think will come from this is if the Court can ensure that full restitution is paid, then we can make sure that the public's interest will be met by helping the young people in the community in the years to come as the funds are repaid back to our organization. Thank you.

THE COURT: Thank you, Mr. Butler. The Court appreciates your input.

MS. VOGEL: Your Honor, if I may, I would also like to indicate the $50,000 -- $50,000 has been paid by the insurance company, and that sum

5

would be subrogated through Traveler's.

THE COURT: Thank you. Good morning, Mr. Dorn.

MR. DORN: Good morning, Judge.

THE COURT: Anything you would like to say in behalf of your client?

MR. DORN: Yes, Judge. I submitted a presentence memorandum to the Court, and I've also submitted eleven character letters on my client's behalf. There's no one that feels worse about this than my client. She worked there for 22 years, her husband worked there for 19 years; a total of 41 years combined service to the Boy Scouts. And her husband knew absolutely nothing about this. It was her fault. She takes full responsibility for it.

I've been practicing for 30 years. I think I know what remorse is, and she's certainly shown remorse as a result of this, Judge. She's trying to make every effort possible to make full restitution. The family has come up with $20,000. There's a commitment from the family to come up with an additional $70,000 over the course of five years. She's also going to assign a portion of

6

her pension to the Boy Scouts, and hopefully within six or seven years, the full amount will be paid off. Unfortunately, there is a surcharge that has to be paid through probation which will be an additional, it is my understanding, $20,000, so not only does she have to pay the full restitution, but she also has to pay an additional $20,000. So I would ask the Court to consider probation in this case under all the circumstances.

THE COURT: Thank you, Mr. Dorn. Ms. Maeder, is there anything, ma'am, you'd like to say in your own behalf?

THE DEFENDANT: Yes. I want to apologize to the staff and Executive Board of the Boy Scouts of America. I have no excuse for what I did. I betrayed your trust in me. I will, for the rest of my life, carry this with me. I truly loved working for the Boy Scouts for the 22 years that I was an employee. The organization is one that I truly believe in, and to this day I still, in my heart, are a part of that. It was more than a job for me; working for the Boy Scouts was a big part of my life, and I am suffering because of the

                                                                    7

separation from that. Please know that I was not thinking clearly and did not mean to harm anyone.

I hope that you will also remember me for some of the good things I did while an employee and the many years that I served when I was an honest and dedicated employee. It was this love and dedication to the Boy Scouts that made me call Gary on January 4th and ask him to meet me at the office. I had to resign because I could not live with the guilt anymore, and I had to put a stop to it.

I wish the Boy Scouts well in their future endeavors and will be praying for your continued success in educating the young boys into becoming good, honest young men. I know it is too much to ask that you forgive me, but please try to think of me -- not to think of me as an evil person.

I would also like to apologize to my family and friends. I cannot describe the hurt I feel every time I look in your eyes. I feel I have totally lost your respect. I carry this guilt with me always. Hopefully time will begin to heal me and I will be able to look at you again and know that you forgive me.

```
 1                                                          8
 2           To my husband, I want you to know that you
 3   are the best man I have ever met, and I thank God
 4   for giving me to you, and I am so sorry for what I
 5   have done.
 6           To my children, I want you to know that I
 7   love you very much, and I'm so sorry that I have
 8   made your life so difficult. I tried to be the
 9   best mother I could.
10           To my sisters, brother-in-law and
11   sister-in-law, I don't know what we would have
12   done without you these past few months. I also
13   don't know what I would have done without you my
14   whole life. You have been my support system since
15   we lost our parents. I am asking you to forgive
16   me and hope that one day you can.
17           THE COURT: Thank you, Miss Maeder. The
18   Court appreciates your comments.
19           Ms. Maeder, what happened to the money,
20   $200,000, where did it go?
21           THE DEFENDANT: I spent it for family
22   expenses, your Honor. I was living beyond my
23   means.
24           THE COURT: Thank you. With that,
25   Ms. Maeder, you pled guilty to grand larceny in
```

2    the second degree.  I reviewed the presentence
3    report, the victim impact statement from the Boy
4    Scouts and their Executive Director, Mr. Butler,
5    who spoke today, a letter from Dawn Walker, a
6    social worker, numerous letters from your family
7    and friends, and Mr. Dorn's sentencing memorandum.
8    In this case, Ms. Maeder, I think we're all
9    familiar with it, but in a five-year period,
10   between 1999 and 2004, you stole approximately
11   $207,000 from the Boy Scouts of America, and you
12   had worked there for approximately 22 years.  I
13   think what struck me in the presentence report is
14   how deeply the Boy Scouts were affected.  They
15   failed to meet their budget, they had to eliminate
16   a full-time position with a woman who was a single
17   mother with two kids, and they had to cut the
18   hours of another part-time position there.  In
19   addition, because of the theft, they had to reduce
20   the employee health benefits that they received.
21   I was also surprised to see, Ms. Maeder, I didn't
22   realize this when you pled guilty, that you had
23   filed bankruptcy a number of times over those
24   years while you were taking money from the Boy
25   Scouts.  Is that correct?

```
                                                              10
```

THE DEFENDANT: No, before.

THE COURT: Before? But you filed bankruptcy a couple times?

THE DEFENDANT: Yes.

THE COURT: And, again, you're just living beyond your means, is that -- with that, Ms. Maeder, this is a difficult case. It's a lot of money. There's a lot of heartache here. Whether a Court sentences you to jail or probation is a huge decision. I decided, as I told your lawyer earlier, to sentence you to probation. The primary reason for that is the restitution. The Boy Scouts need this money back. You started that. You've given them $20,000 toward the restitution to date.

THE DEFENDANT: Yes, your Honor.

THE COURT: And you have promised that you will pay a $1,000 a month to the Boy Scouts, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Although I will sentence you to probation, and I think that's the right decision in this case, although difficult, if that restitution's not made and probation is violated,

11

I can sentence you up to 15 years. You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand I don't hesitate or anguish about that if the probation is violated?

THE DEFENDANT: Yes, your Honor.

THE COURT: With that, Ms. Maeder, it's the judgment of this Court to sentence you to probation for a period of 5 years. The conditions of the probation are as follows: Restitution in the amount of $206,939.43 minus the 20,000 already paid. In addition, you will pay, however you get that, whether it's through your own funds or through your family, a $1,000 a month while on probation; that you will remain arrest free -- I would hope that wouldn't be a problem for you.

THE DEFENDANT: No.

THE COURT: -- that you will report to the probation officer; and that you will enter any counseling that they suggest. You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: There's a $210 surcharge -- I'm

```
                                                                    12
        sorry, there's a $155 surcharge on the felony

   conviction.  That's automatic by law.  And there's

   30 days to appeal.  Thank you.

        MS. VOGEL:  Thank you, your Honor.

        MR. DORN:  Thank you, Judge.

             *      *      *      *      *

The foregoing is certified to be a true and accurate

transcript according to my stenographic notes.


                        [signature]
                   Kathleen R. Hoffman, CSR, RMR, CMRS
                         Senior Court Reporter
```